**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 09 B 44943 |
| | ) | Chapter 7 |
| CANOPY FINANCIAL, INC., | ) | Judge Eugene R. Wedoff |
| | ) | |
| Debtor. | ) | Adversary No. 11 A 581 |
| | ) | |
| ──────────────────────── | ) | |
| | ) | |
| GUS A. PALOIAN, not individually but solely | ) | |
| as Chapter 7 trustee for Canopy Financial, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 5360 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| AMERICAN EXPRESS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Debtor Canopy Financial filed its Chapter 11 bankruptcy petition on November 25, 2009.
The case was converted to a Chapter 7 proceeding on December 30, 2009, and the Bankruptcy
Court appointed the plaintiff in this matter, Gus Paloian, as the Chapter 7 trustee for Canopy.
Paloian thereafter filed the complaint in the instant adversary proceeding against Defendant
American Express on March 4, 2011.  Paloian seeks to recover payments made by Canopy to
American Express that were allegedly the result of fraud perpetrated by Canopy's former
officers.  The complaint sets forth six counts.  Counts One and Three are for the avoidance and
recovery of fraudulent transfers pursuant to Sections 548 and 550 of the Bankruptcy Code, 11
U.S.C. §§ 548 & 550.  Counts Two, Four, and Five are for avoidance and recovery of fraudulent
transfers pursuant to Illinois law, 740 Ill. Comp. Stat. §§ 160/5(a) & 160/8(a), and Sections 544
and 550 of the Bankruptcy Code, 11 U.S.C. §§ 544 & 550.  Count Six is a claim for unjust

1

enrichment under Illinois law. American Express now moves to withdraw the reference of this case to the Bankruptcy Court, arguing that the reference violates Article III of the United States Constitution. For the following reasons, the Court DENIES that motion.

## I. Standard of review

Pursuant to 28 U.S.C. § 157(a), the District Court may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the Bankruptcy Court. However, the District Court may withdraw such reference "for cause shown." *Id.* at § 157(d). It is beyond dispute that if Defendant is correct that the referral in this case was unconstitutional, the District Court has sufficient cause to withdraw the reference.

## II. Analysis

The primary question before the Court is what effect the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), has on the Bankruptcy Court's authority in this case. In *Stern*, the respondent filed a defamation claim and a proof of claim in the petitioner-debtor's bankruptcy proceeding. *Id.* at 2601. He claimed that the debtor, his stepmother, had falsely accused him of fraudulently manipulating his father's estate in order to prevent the debtor from receiving her share of the inheritance. *Id.* The debtor responded by asserting a defense of truth and filing a counterclaim for tortious interference with the gift she expected from her deceased husband's estate. *Id.* The Court held that it was improper for the Bankruptcy Court to enter final judgment on that counterclaim because it lacked constitutional authority to do so. *Id.* at 2620. More specifically, the Court held that entering final judgment on the claim was an exercise of the judicial power that the Constitution vests only in judges who enjoy the protections described in Article III. *Id.* American Express argues that the claims

2

Paloian has filed in this adversary proceeding fall into the same category of cases as the counterclaim in *Stern* and that they Bankruptcy Court is therefore barred from deciding, or even hearing them.

The statute that provides for reference of bankruptcy proceedings to bankruptcy courts distinguishes between "core proceedings" and proceedings "otherwise related to a case under title 11." 28 U.S.C. § 157. Bankruptcy courts may hear and enter final judgments in core proceedings. *Stern*, 131 S. Ct. at 2603; 28 U.S.C. § 157(b)(1)-(2). Bankruptcy courts can hear non-core proceedings that are otherwise related to a case under title 11, but may only submit proposed findings of fact and conclusions of law to the district court, which then enters final judgment after *de novo* review of any matter to which a party objects. *Stern*, 131 S. Ct. at 2604; 28 U.S.C. § 157(c)(1).

In *Stern*, the Court determined that the Bankruptcy Court had statutory authority to enter final judgment on the counterclaim in question pursuant to 28 U.S.C. § 157(b)(2)(C), which categorizes "counterclaims by the estate against persons filing claims against the estate" as core proceedings. 131 S. Ct. at 2605. Similarly, Paloian's fraudulent conveyance claims explicitly fall into the statute's definition of core proceedings, which includes "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 156(b)(2)(H). Thus, the statute provides the Bankruptcy Court with authority to enter final judgment on Paloian's claims. However, the *Stern* Court held that the bankruptcy court in that case lacked constitutional authority to enter final judgment on the debtor's counterclaim. *Id.* at 2601. Thus, it held at least part of the statutory scheme unconstitutional. The parties dispute the import of that holding.

## A. Constitutional authority

The first dispute between the parties is over whether the Bankruptcy Court, after *Stern*,

still has constitutional authority to enter final judgment on Paloian's claims. *Stern* did not

directly address the constitutionality of bankruptcy courts ruling on fraudulent conveyance

claims, and explicitly intended its decision to be read narrowly. *See, e.g.,* 131 S. Ct. at 2620

("the question presented here is a 'narrow' one"). Paloian argues that the Court therefore need

not apply *Stern* here. However, the language of *Stern* makes clear that the decision, while

narrow, is at least broad enough to reach this case.

*Stern*'s breadth is made apparent by the Court's reliance in that case on an earlier

decision. Prior to *Stern*, the Supreme Court addressed a related question in a case involving

fraudulent conveyance claims, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782,

106 L.Ed.2d 26 (1989). Paloian points out that *Granfinanciera* principally addressed the

question of whether a defendant had a right to a jury trial in a fraudulent conveyance action

despite the action's designation as a "core proceeding," and that there has been no jury demand

in this case. This is true, but it does not provide Paloian with a meaningful distinction, for in

holding that a defendant did have such a right, the Court in *Granfinanciera* stated as follows:

> [M]atters from their nature subject to a suit at common law or in
> equity or admiralty lie at the "protected core" of Article III judicial
> power...There can be little doubt that fraudulent conveyance
> actions by bankruptcy trustees – suits which...constitute no part of
> the proceedings in bankruptcy but concern controversies arising
> out of it – are quintessentially suits at common law that more
> nearly resemble state-law contract claims brought by a bankrupt
> corporation to augment the bankruptcy estate than they do
> creditors' hierarchically ordered claims to a pro rata share of the
> bankruptcy res.

*Id.* at 56, 109 S. Ct. at 2798 (internal quotations and citations omitted). Thus, the Court in *Granfinanciera* made clear that a court deciding a fraudulent conveyance action was exercising Article III judicial power.

In *Stern*, the Court then reiterated this point, and held specifically that only Article III courts could enter final judgment on actions like those described in *Granfinanciera* that "are quintessentially suits at common law." 131 S. Ct. 2614-16. The Court recognized that there is a somewhat ill-defined exception to the general limitations on the authority of "legislative" courts not covered by the protections of Article III that applies to cases involving "public rights." *Id.* at 2610. However, the Court found that the "public rights" doctrine did not apply to the counterclaim in question because, like the claims in *Granfinanciera*, it was a claim "at common law that simply attempts to augment the bankruptcy estate." *Stern*, 131 S. Ct. at 2616. Thus, by likening the claim in question to the fraudulent conveyance claims in *Granfinanciera*, the *Stern* Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on the claims presented here.

## B. Remaining statutory authority

Having determined that *Stern* invalidated at least some portion of the statutory authority that § 157 gives bankruptcy courts over fraudulent conveyance actions, the Court must next determine what statutory authority remains. The parties disagree on this point as well. American Express posits that because fraudulent conveyance claims are expressly included in the core proceedings category in § 157, that is where they remain after *Stern*. In other words, while American Express recognizes the Supreme Court's decision to invalidate some portion of the statute, it argues that the Court could not have rewritten the statute to re-categorize certain claims as proceedings "otherwise related to" title 11. Thus, American Express argues that the

Bankruptcy Court not only lacks constitutional authority to enter final judgment on Paloian's claims, but lacks statutory authority to hear his claims and provide proposed findings of fact and conclusions of law to this court because the statute only provides that authority for non-core proceedings. *See* 28 U.S.C. § 157(c)(1).

There is some appeal to the argument American Express sets forth because the Supreme Court cannot rewrite a statute. However, the argument fails for a couple of reasons. Most importantly, it seems to conflict with the language of the Supreme Court's opinion in *Stern*. The Court did not rule directly on this question. Nonetheless, throughout its opinion, the Court explicitly limited its holding to a decision that bankruptcy courts were without constitutional authority to enter final judgment on certain claims. *See, e.g., Stern*, 131 S. Ct. at 2601, 2608, 2611, 2618, 2619, & 2620. It never suggested that bankruptcy courts could not otherwise hear those claims. In fact, in dicta, the Court suggested the opposite:

> [T]he current bankruptcy system...requires the district court to review *de novo* and enter final judgment on any matters that are "related to" the bankruptcy proceedings, and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof. [Respondent] has not argued that the bankruptcy courts are barred from "hearing" all counterclaims or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that finally decides them. We do not think the removal of counterclaims such as [Petitioner's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States [appearing as *amicus curiae*] that the question presented here is a "narrow" one.

*Id.* at 2620 (internal quotations, citations, and brackets omitted). Thus, the Court at least implied that the effect of its decision was to "remove" certain claims from "core bankruptcy jurisdiction," and to relegate them to the category of claims that are merely "related to"

bankruptcy proceedings and thus subject to being heard, but not finally decided, by bankruptcy courts.

This language alone, drafted mere months ago by our nation's highest court, certainly provides this court with sufficient authority to deny the argument American Express sets forth. However, contrary to the suggestions of American Express, it is also reconcilable with the remainder of the Supreme Court's opinion. The Court held the statute's treatment of certain claims to be unconstitutional. One might presume, as American Express has, that this decision voided any statutory language applicable to those claims, leaving them to occupy a virtual "no man's land" on the statutory landscape. Under that interpretation, claims such as Paloian's remain core proceedings, but may not be treated like core proceedings or non-core proceedings. However, there are other reasonable interpretations available.

One might presume instead that the Supreme Court found § 157 unconstitutional insofar as it classified certain claims as core proceedings. This is a reasonable presumption given that the Court has described fraudulent conveyance actions as "suits which...constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *Granfinanciera*, 492 U.S. at 56, 109 S. Ct. at 2798; *but see* 28 U.S.C. §157(b)(1) (defining "core proceedings" to include those "arising in a case under title 11"). It is also reasonable given the Court's implication that it was "removing" claims from "core bankruptcy jurisdiction." *See Stern*, 131 S. Ct. at 2620. Applying this interpretation to this case, the Supreme Court essentially struck 28 U.S.C. § 157(b)(2)(H), which defines fraudulent conveyance proceedings as core proceedings, as unconstitutional. But, Paloian's claims undoubtedly remain "related to" Canopy's bankruptcy proceedings and therefore fall within the reach of the bankruptcy court's authority to hear non-core proceedings and propose findings to the district court.

In fact, one might even interpret the Supreme Court's decision as allowing for bankruptcy courts to hear fraudulent conveyance actions even though they remain core proceedings. One might presume that the Supreme Court simply found the language in § 157(b)(1) allowing bankruptcy courts to "determine" all core proceedings to be unconstitutional as applied to certain types of claims. Under this interpretation, the Court essentially struck that word from consideration in all cases where the statute is applied to those claims that lie at the "protected core" of Article III judicial power. However, the statute would still allow bankruptcy courts to "hear" all those claims, even if they remain core proceedings. *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all...core proceedings"). This interpretation is slightly less elegant, as it leaves the statute silent on what procedures bankruptcy courts should follow in conducting such hearings. Thus, if the Court were to employ this interpretation, unless and until Congress responds to the Supreme Court's ruling in *Stern*, the Court would have to make a reasonable interpretation of the bankruptcy courts' authority to "hear" core proceedings in cases where they cannot enter final judgments. Given that bankruptcy courts may propose findings of fact and conclusions of law in non-core proceedings, it is reasonable to assume that they could employ the same procedure in core proceedings.

The Court need not determine which of these interpretations is proper because they lead the Court to the same conclusion in this case. The Court holds that *Stern* did not strip the Bankruptcy Court of the authority to hear Paloian's claims against American Express and to propose findings of fact and conclusions of law on those claims to this court. The Court therefore holds that American Express has failed to show cause for withdrawing the reference of these proceedings to the Bankruptcy Court.

## *CONCLUSION*

For the foregoing reasons, the Court DENIES Defendant's motion to withdraw the reference.

IT IS SO ORDERED.

_____9/1/11_____

Dated

Hon. William J. Hibbler
United States District Court